**Mark D. MYERS d/b/a VMC USA, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**FARMER'S INVESTMENT GROUP d/b/a Santa Cruz Valley Pecan, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 97–75.**
**Court Nos. 93–07–00421, 93–11–00744.**

United States Court of International Trade.

June 17, 1997.

O'Donnell, Byrne & Williams, (R. Kevin Williams, Michael A. Johnson), Chicago, IL, for plaintiff Mark D. Myers d/b/a VMC USA.

Barnes, Richardson & Colburn, (Sandra Liss Friedman, Frederic D. Van Arnam, Jr.),

New York City, for plaintiff Farmer's Investment Group d/b/a Santa Cruz Valley Pecan.

Frank W. Hunger, Assistant Attorney General of the United States, Washington, DC, Joseph L Liebman, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Barbara Silver Williams), Beth C. Brotman, Office of Assistant Chief Counsel, New York City, International Trade Litigation, United States Customs Service, of counsel, for defendant.

## OPINION

CARMAN, Chief Judge:

Plaintiffs are importers of the subject merchandise, which consists of a glass jar and glass lid, a wire bail and trigger closure mechanism, and a natural rubber gasket. In the course of liquidation, the subject merchandise was classified by the United States Customs Service ("Customs") under various provisions within Heading 7013 of the Harmonized Tariff Schedule of the United States ("HTSUS"), and assessed the scheduled duty rates of between 7.2% and 30% *ad valorem*, depending on the value of the jar or terrine imported.

Plaintiffs contend the merchandise at issue should be classified under Heading 7010, HTSUS, the relevant provisions of which state: [1]

| 7010 | Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for the conveyance or packing of goods; preserving jars of glass; stoppers, lids and other closures, of glass: | |
|---|---|---|
| 7010.90 | Other: | |
| 7010.90.50 | Other containers (with or without their closures) .................. | Free |

In contrast, the United States contends the merchandise was properly classified and liquidated by Customs under various provisions of Heading 7013, HTSUS, which state:

| 7013 | Glassware of a kind used for table, kitchen, toilet, office, indoor decoration or similar purposes (other than that of heading 7010 or 7018): | |
|---|---|---|
| 7013.39 | Other: | |
| 7013.39.20 | Other: | |
| | Valued not over $3 each ....................................... | 30% |
| 7013.39.50 | Other: | |
| | Valued over $3 but not over $5 each ........................... | 15% |
| 7013.39.60 | Valued over $5 each ........................................ | 7.2% |
| | Other glassware: | |
| | Of lead crystal: | |
| 7013.91.20 | Valued over $1 but not over $3 each ........................... | 14% |
| 7013.99 | Other: | |
| | Other: | |
| 7013.99.50 | Valued over $0.30 but not over $3 each............................................... | 30% |
| | Valued over $3 each: | |

---

1. The HTSUS provisions cited by the Court appear in HTSUS (4th ed. 1992 & Supp. 1).

| | Other: | |
|---|---|---|
| 7013.99.80 | Valued over $3 but not over $5 each............................................... | 15% |
| 7013.99.90 | Valued over $5 each.................................... | 7.2% |

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a)(1988). For the reasons set forth below, the Court holds the tariff term "preserving jars of glass" in Heading 7010, HTSUS, is an *eo nomine* provision, and finds the merchandise at issue is properly classifiable under subheading 7010.90.50, HTSUS. Judgment will therefore be entered for plaintiffs. Plaintiffs' motion for directed judgment, made at the conclusion of the trial conducted before this Court, is subsumed by this opinion.

## BACKGROUND

Plaintiff, Mark D. Myers d/b/a VMC USA, imports Le Parfait Super glass jars and terrines manufactured by VMC Grand Public in Riems, France. The subject merchandise specifically includes 200 gram, 350 gram, 500 gram, 750 gram, and 1,000 gram Le Parfait Super glass terrines, and .5 liter, .75 liter, 1 liter, 1.5 liter, 2 liter,[2] and 3 liter Le Parfait Super glass jars. (*See* Mark D. Myers' Am. Compl. at ¶ 7.)

Plaintiff, Farmer's Investment Group d/b/a Santa Cruz Valley Pecan, imports 1 and 1.5 liter glass jars. The imported merchandise is decorated with the motif and name of Country Estate Pecans, a commercial food packer. (*See* Farmer's Investment Group's Compl. at ¶ 4.) The glass jars imported by Farmer's Investment Group are manufactured by Verrerle Christallerie D'Arque, which is owned by J.G. Durand & Cie of Arques, France.

## CONTENTIONS OF THE PARTIES

### A. *Plaintiffs*

Plaintiffs make two arguments in advancing their contention the subject merchandise should be classified under subheading 7010.90.50, HTSUS. First, plaintiffs maintain the tariff term "preserving jars of glass" is an *eo nomine* provision, citing in support of their argument this Court's decision in *Commercial Aluminum Cookware Co. v. United States*, 938 F.Supp. 875, 883–84 (CIT 1996), as well as the legislative history of Heading 7010, HTSUS.

Plaintiffs argue, in the alternative, even if the Court determines "preserving jars of glass" is a principal use provision, the merchandise at issue is properly classified under subheading 7010.90.50, HTSUS. In support of this argument, plaintiffs maintain an application of the *Carborundum* factors [3] to the evidence presented at trial establishes the subject merchandise is a class or kind of "preserving jar[ ] of glass" and therefore properly is classified under subheading 7010.90.50, HTSUS.

### B. *Defendant*

In responding to plaintiffs' arguments, the defendant makes three contentions in maintaining Customs' properly classified the subject merchandise under various provisions of Heading 7013, HTSUS. First, defendant asserts the tariff term "preserving jars of glass" is a principal use or *eo nomine* by use provision which should be read as applying to "jars which are used for preserving." (Def's Mem. in Supp. of Mot. in Limine at 6.) Defendant asserts the term "preserving jars of glass" cannot be considered an *eo nomine* provision because "there is no commercial understanding of the tariff term 'preserving

**2.** Additionally at issue are 1 and 2 liter Le Parfait Super preserving jars decorated with logos and designs of the Arizona Pistachio Company. (*See* Mark D. Myers' Am.Compl. ¶ 113.)

**3.** In *United States v. The Carborundum Company*, 63 C.C.P.A. 98, 102, 536 F.2d 373, 377 (1976), the Court established five criteria for determining whether an item properly is classified within a principal use tariff provision. The factors are: (1) the general physical characteristics of the merchandise; (2) the expectation of the ultimate purchaser; (3) the channels of trade in which the merchandise moves; (4) the environment of sale; and (5) usage, if any, in the same manner as the merchandise which defines the class.

jars of glass' as a specific, identifiable article." (Def.'s Post–Trial Mem. ("Def.'s Br.") at 1.)

Second, defendant argues under the statute "the term 'preserving jar' is limited to the class or kind of jar principally used in the home for preserving." (*Id.* at 2.) Defendant asserts the provision "jars, . . . and other containers, of glass, of a kind used for the conveyance or packing of goods" in Heading 7010, HTSUS, covers jars used commercially, while the provision for "preserving jars of glass" covers "home preserving only." (*Id.*) In making this argument defendant relies heavily on a report entitled "Complete Guide to Home Canning", prepared by the United States Department of Agriculture ("USDA"), which recommends that jars similar to the subject merchandise not be used for home canning.

Finally, defendant asserts the evidence presented at trial failed to establish the subject merchandise is of the class or kind of merchandise covered by Heading 7010, HTSUS. Defendant maintains "the evidence showed that the jars in issue do not fall within the class or kind of jars principally used in the home" and that "plaintiffs did not show that the jars are principally used commercially in preserving." (*Id.* at 3.)

## STANDARD OF REVIEW

■ Precedent establishes "[t]he ultimate issue as to whether particular imported merchandise has been classified under an appropriate tariff provision . . . entails a two step process: (1) ascertaining the proper meaning of specific terms in the tariff provision; and (2) determining whether the merchandise at issue comes within the description of such terms as properly construed." *Sports Graphics, Inc. v. United States,* 24 F.3d 1390, 1391 (Fed.Cir.1994); *see also Universal Electronics Inc. v. United States,* 112 F.3d 488, 491 (Fed.Cir.1997) (citing *Intel Singapore, Ltd. v. United States,* 83 F.3d 1416, 1417–18 (Fed.Cir.1996)). The first step is a question of law; the second, a question of fact. *See, e.g., Universal Electronics Inc.,* 112 F.3d at 491; *Medline Indus., Inc. v. United States,* 62 F.3d 1407, 1409 (Fed.Cir.1995); *E.M.*

*Chem. v. United States,* 9 Fed.Cir. (T) 33, 35, 920 F.2d 910, 912 (1990).

■ The statute provides Customs' classification decision is presumed to be correct, and the importer has the burden of proving otherwise. *See* 28 U.S.C. § 2639(a)(1) (1988). While the statute provides Customs' decision is accorded a presumption of correctness, the presumption "is a procedural device that is designed to allocate, between the two litigants to a lawsuit, the burden of producing *evidence* in sufficient quantity." *Universal Electronics Inc.,* 112 F.3d at 492. While the presumption of correctness "certainly carries force on any factual components of a classification decision", it "carries no force as to questions of law", which this Court reviews *de novo. Id.; see also Semperit Industrial Products, Inc. v. United States,* 18 CIT 578, 587, 855 F.Supp. 1292, 1300 (1994) ("[D]eference [to Customs' classification] is logically incompatible with the Court's role in customs classification cases because the standard in these cases requires the Court to reject any interpretation, *however reasonable,* that the Court determines is incorrect.").

■ The Court reviews Customs' classification decisions *de novo* under 28 U.S.C. § 2640(a)(1) (1988), and is required to reach the correct result. *See* 28 U.S.C. § 2643(b) (1988); *Jarvis Clark Co. v. United States,* 2 Fed.Cir. (T) 70, 78, 733 F.2d 873, 880 (1984) (once plaintiff establishes Customs' classification is incorrect, "it [is] the court's duty to find a correct answer"). In determining whether the importer has overcome the statutory presumption of correctness, the court must consider "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co.,* 2 Fed. Cir. (T) at 75, 733 F.2d at 878.

## DISCUSSION

After hearing the evidence offered at trial *de novo* and reviewing the papers submitted by the parties, the Court makes the following findings of fact. First, the Court finds the terms "canning jar" and "preserving jar" are synonymous, and that the industry uses the terms interchangeably. The Court notes Dr.

Kenneth Hall, Professor of Nutritional Sciences at the University of Connecticut, testified "[f]requently they're [canning jar and preserving jar] used as synonyms." Trial Tr. at 135. Additionally, the testimony of Andrew Liscow, a vice president at Cincinnati Preserving Company, opined "canning jar" and "preserving jar" are synonymous terms. *See id.* at 328. Finally, the Court notes the testimony of Matteo Petrillo, the chief financial officer of J.G. Durand International, states there is no distinction between "canning" jars and "preserving" jars. *See id.* at 68–69. The Court finds the testimony of these three individuals more persuasive than that of Dr. Sher Paul Singh, Associate Professor at the Michigan State University School of Packaging, who testified the term "preserving jar" is not a term used "in connection with jars used commercially to pack and convey food." *Id.* at 365.

Second, the Court finds fundamental differences exist in the physical characteristics of what were referred to as "one-way" or "packing and conveyancing jars" and "preserving jars". The Court finds an examination of the preserving jars reveals they are manufactured so that the glass is noticeably thicker than the packing and conveyancing jars. *See also id.* at 288–89. The thickness of the glass in the preserving jars increases their durability and facilitates their reuse in home canning or preserving. *See id.* at 92, 287–88. In contrast, packing and conveyancing jars, designed to facilitate the transportation of a product from the manufacturer to the consumer, are manufactured with less glass. *See id.* at 287–88, 408. Additionally, while both the preserving and packing and conveyancing jars can be processed in a manner so that a hermetic seal is formed between the jar and the lid, the Court finds the sale of replacement gaskets for use with the subject merchandise emphasizes the fact that a new hermetic seal can be formed each time the jar is reused for home canning and preserving. In contrast, the packing and conveyancing jars do not have closure mechanisms that would permit their reuse by consumers in home canning and preserving applications. Rather, once the hermetic seal is broken when the jar is opened, there is no means for the consumer to recreate a reliable hermetic seal.

Additionally, the Court finds significant differences exist between the physical characteristics of" storage jars" and "preserving jars". The Court finds unlike packing and conveyancing jars and preserving jars, storage jars are not designed in such a manner that a hermetic seal, which prevents air from entering the head space of the jar, can be formed between the jar and the lid. Storage jars are utilized where hermetic seals are not needed, *i.e.*, for the storage of buttons or nails. Matteo Petrillo testified storage jars manufactured by Durand "are not capable of forming an air tight seal during thermal processing." *Id.* at 65. Similarly, in his testimony Peter Forttrell, a Field National Import Specialist for the United States Customs Service, stated a storage jar is distinguishable from a preserving jar because with storage jars "there's no way to make a tight seal [between the lid and the jar]." *Id.* at 549. Additionally, the Court finds an examination of the jars reveals significant differences in the amount of glass used in manufacturing storage jars and preserving jars. The storage jars, like the packing and conveyancing jars, are manufactured in such a manner that the walls of the jar are noticeably thinner than the preserving jars. *See also id.* at 65, 290–91.

Having made these findings of fact, the Court will now discuss its determinations on the questions of law raised in this matter.

A. *"Preserving Jars of Glass" is an Eo Nomine Tariff Term*

■ A central issue confronting the Court is whether the tariff term "preserving jars of glass" in Heading 7010, HTSUS, is an eo nomine provision or a principal use provision. Initially, the Court notes an *eo nomine* provision "describes a commodity by a specific name, usually one well known to commerce." *See* Ruth F. Sturm, *Customs Law & Administration* § 53.2 at 2 (Supp.1995) (citing *United States v. Bruckmann*, 65 C.C.P.A. 90, 582 F.2d 622, 625 n. 8 (1978)). The Court of Customs and Patent Appeals, a predecessor to the United States Court of Appeals for the Federal Circuit, noted:

The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

*Nootka Packing Co. v. United States*, 22 C.C.P.A. 464, 470, T.D. 47464, 1935 WL 2283 (1935); *see also Lynteq, Inc. v. United States*, 976 F.2d 693, 697 (Fed.Cir.1992) ("Tariff terms contained in the statutory language 'are to be construed in accordance with their common and popular meaning, in the absence of contrary legislative intent.'") (citation omitted).

Tariff provisions also classify items based on the use of the class or kind of articles to which the imported merchandise belongs. The Additional U.S. Rules of Interpretation to the HTSUS provide:

1. In the absence of special language or context which otherwise requires—

   (a) a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

HTSUS Additional U.S. Rules of Interpretation, 1.(a).

Plaintiffs maintain the term "preserving jars of glass" is an *eo nomine* provision and challenge defendant's arguments, asserting the cases cited by defendant "do not stand for the proposition that *eo nomine* provisions are governed by use, or principal use." (Pls.' Joint Resp. to Def's Mot. in Limine at 11.) Plaintiffs assert "[t]o the contrary, it is well founded Customs law that an *eo nomine* provision is one that describes a commodity by a specific name, usually one well known to commerce." (*Id.* at 11–12 (citation omitted).)

Defendant asserts use is controlling in classifying the jars at issue, maintaining "[a] review of long standing judicial precedent, the plain face of the statute, and lexicographical authorities demonstrate that the tariff term 'preserving jars of glass' 7010, HTSUS, is a principle [sic] use provision rather than an *eo nomine* provision." (Def.'s Mem. in Supp. of Mot. in Limine at 3.) Additionally, defendant asserts "even if the term 'preserving jars of glass' is an *eo nomine* provision, it is a provision governed by use." (*Id.* at 3–4 (citing *United States v. Quon Quon Company*, 46 C.C.P.A. 70, C.A.D. 699, 1959 WL 7626 (1959).))

While defendant's Motion in Limine cites *United States v. Quon Quon Company*, 46 C.C.P.A. 70, C.A.D. 699, 1959 WL 7626 (1959), as standing for the proposition that tariff terms may be characterized as *eo nomine* provisions governed by use, the Court reads this opinion differently. Judge Rich states

[w]hile unhesitatingly granting the truth of the contention that "baskets" in the tariff act provides for baskets *"eo nomine,"* this does not help us in the least to decide whether the imported articles *are* baskets.... Of all things most likely to help in the *determination of the identity of a* manufactured article, beyond the appearance factors of size, shape, construction and the like, use is of paramount importance. To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act.

*Quon Quon Company*, 46 C.C.P.A. at 73. The *Quon Quon Company* opinion supports the proposition "use is an important factor in determining classification though an *eo nomine* designation is involved" and "use cannot be ignored in determining whether an article falls within an *eo nomine* tariff provision." *Id.* at 72, 73. All Judge Rich's opinion indicates, however, is that use is one of the factors to be considered in determining whether merchandise falls within the scope of an *eo nomine* tariff provision. The Court does not read the *Quon Quon Company* opinion to support the proposition "certain *eo nomine* provisions are in fact governed by use." (Def.'s Mem. in Supp. of Mot. in Limine at 4.) Accordingly, the Court rejects defendant's assertion that the term "preserv-

ing jars of glass" is an *eo nomine* by principal use provision.

As for the issue of whether the tariff term "preserving jars of glass" is an *eo nomine* or principal use provision, the Court notes two previous opinions issued by this Court have interpreted the language in Heading 7010, HTSUS. First, in *Group Italglass U.S.A., Inc. v. United States*, 17 CIT 226, 228, 1993 WL 97624 (1993), the Court held the provision in Heading 7010, HTSUS, addressing "Carboys, bottles, flasks, jars, pots, vials, ampoules and other containers, of glass, of a kind used for the conveyance or packing of goods" is a principal use provision. According to the court "[t]he language in heading 7010 'of a kind used for' explicitly invokes use as a criterion for classification and under heading 7010 principal use is controlling." *Id.*

A second opinion, *Commercial Aluminum Cookware Co. v. United States*, 938 F.Supp. 875, 883 (CIT 1996), held the third clause of Heading 7010, HTSUS, addressing "stoppers, lids and other closures, of glass" is an *eo nomine* provision. In reaching this holding, the Court determined "each listing of items in Heading 7010, HTSUS, separated by semicolons, constitutes a separate class of merchandise" and that the semicolons "create a wall around each grouping of items preventing the qualifying language from one grouping from applying to another." *Commercial Aluminum Cookware Co.*, 938 F.Supp. at 882, 883. Additionally, the *Commercial Aluminum* opinion notes

> [t]here is no language in the statutory provision dictating that the "preserving jars of glass" be limited to those "preserving jars of glass" that are "of a kind used for the conveyance or packing of goods." The only qualification is that the jars be "of glass." ... If the drafters of the tariff provision meant for the qualifying language in the first class of merchandise to be read throughout the heading, they were perfectly capable of including such language at the end of the heading as is commonly done in other tariff provisions.

*Id.* at 883 (footnote omitted).

Based on this precedent and the plain language of the tariff term, the Court finds the

three clauses encompassed in Heading 7010, HTSUS, are separate independent clauses and the qualifying principal use language included in the first clause of Heading 7010, HTSUS, does not apply to the term "preserving jars of glass". Accordingly, the Court holds the tariff term "preserving jars of glass" in Heading 7010, HTSUS, is an *eo nomine* provision.

**B. Scope of the Tariff Term "Preserving Jars of Glass"**

The next issue facing the Court is defining the scope of the tariff term "preserving jars of glass", which is also a question of law reviewed by this Court *de novo*. The General Rules of Interpretation of the HTSUS provide "classification shall be determined according to the terms of the headings and any relative section or chapter notes." HTSUS, Gen.R.Interp. 1. When a tariff term is not clearly defined by either the HTSUS or its legislative history, the meaning of the term is generally resolved by ascertaining its common and commercial meaning. *See, e.g., W Y. Moberly, Inc. v. United States*, 924 F.2d 232, 235 (Fed.Cir.1991). In ascertaining common meaning, the court may rely on its own understanding of the term used, and may consult dictionaries, scientific authorities, and other reliable sources of information. *See, e.g., Brookside Veneers, Ltd. v. United States*, 6 Fed.Cir. (T) 121, 125, 847 F.2d 786, 789 (1988).

Finding the term "preserving jar of glass" is not clearly defined by the HTSUS or its legislative history, the Court notes "preserve" is defined as "to can, pickle, or similarly prepare ... for future use." *Webster's Third New International Dictionary* 1794 (1981). Based upon this definition, a "preserving jar" would appear to be commonly understood to be a jar utilized in the canning of foods. Defendant, however, asserts "the structure of the statute ... shows that the term 'preserving jar' is limited to the class or kind of jar principally used in the home for preserving. It does not cover jars used in commercial preserving." (Def's Br. at 1–2.) Defendant asserts the first clause in Heading 7010, HTSUS, addressing jars "used for the conveyance or packing of goods", covers jars

used by commercial food packers. Additionally, defendant argues the term "preserving jars of glass", the second clause in Heading 7010, addresses the remaining jars not covered by the provision for jars "used for the conveyance or packing of goods", in this case jars used in home canning. In support of this contention, defendant notes the "Complete Guide to Home Canning", a publication prepared by USDA, recommends against using preserving jars with a wire bail and trigger mechanism for home canning. Defendant asserts, therefore, the jars at issue are in fact not used for home canning, but rather are used by consumers as storage jars.

The Court rejects defendant's interpretation of the statute. Defendant seems to be arguing that because the clause in Heading 7010, HTSUS, addressing jars "used for the conveyance or packing of goods" covers all jars used for commercial purposes, the clause "preserving jars of glass" only describes preserving jars used for home canning. There is no rational basis for one to draw this conclusion from a plain reading of the statute. Furthermore, the evidence in this case clearly demonstrates that preserving jars of glass are used for commercial purposes, as well as in home canning and preserving applications. The Court interprets the statute to distinguish "packing and conveyance" jars from "preserving" jars based on the physical characteristics of the jars, not, as defendant contends, based on whether the jars are used in the home or commercially. Both packing and conveyance and preserving jars prevent food from decomposing. As the Court noted previously, however, the subject merchandise have certain physical features which differentiate them from packing and conveyance jars. (See Trial Tr. at 365.) The three fundamental feature which distinguish "preserving" jars from "packing and conveyance" jars and "storage" jars are: (1) the thickness of the glass in the walls of the jars; (2) the jar's ability to form and maintain a hermetic seal; and (3) the jar's potential for reuse as a canning or preserving jar.

While both packing and conveyance and preserving jars have the ability to form and maintain a hermetic seal, the walls of the preserving jars are thicker and contain more glass. This characteristic strengthens the jar and facilitates its reuse, whereas packing and conveyance jars have thinner walls and are not intended to be reused in home canning or preserving applications. The potential for reusing the subject merchandise is illustrated by the manufacturer's sale of replacement gaskets. In contrast, once the hermetic seal is broken on a "packing and conveyance" jar, there is no means for the consumer to reestablish the hermetic seal.

Storage jars are easily differentiated from preserving jars because they lack all three features of the preserving jars. Storage jars are not manufactured with thick glass walls, they do not have the ability to form a hermetic seal, and therefore are not able to be reused as a preserving jar.

C. *The Merchandise at Issue is Properly Classified as "Preserving Jars of Glass"*

■ Determining whether the merchandise at issue falls within the tariff provision "preserving jars of glass" is a factual question, and therefore Customs' classification of the subject entries under various provisions of Heading 7013, HTSUS, is entitled to the statutory presumption of correctness. *See Universal Electronics, Inc.,* 112 F.3d at 491–92 (noting "the presumption of correctness applies to the ultimate classification decision").

The Court finds plaintiffs have produced sufficient evidence to overcome the presumption of correctness attaching to Customs' classification. The Court is persuaded the subject merchandise is not properly classified under Heading 7013, HTSUS, by plaintiff's evidence presented on the thickness of the glass in the subject merchandise, the ability of consumers to reuse the subject merchandise for home canning and preserving, and the ability of the subject merchandise to form a vacuum and reduce significantly the exchange of air between the jar's headspace and the outside environment. The Court also finds there are no limitations or contrary legislative intent excluding the imported merchandise from the *eo nomine* designation "preserving jars of glass" in Heading 7010,

HTSUS. Accordingly, the Court holds the merchandise at issue is properly classifiable under subheading 7010.90.50, HTSUS, as "preserving jars of glass".

Finally, the Court notes the language of Heading 7013, HTSUS, which covers certain glassware "(other than that of heading 7010 or 7018)" provides additional support for the Court's determination the plaintiffs have overcome the statutory presumption of correctness. Because plaintiffs have established the merchandise at issue is properly classifiable under subheading 7010.90.50, HTSUS, the merchandise clearly cannot be classified under Heading 7013 because that heading specifically excludes any merchandise properly classified under Heading 7010, HTSUS. *See Commercial Aluminum Cookware Co.,* 938 F.Supp. at 882; *Group Italglass U.S.A., Inc.,* 17 CIT at 227 ("[P]laintiff automatically overcomes the presumption of correctness attaching to Customs' classification under heading 7013.39.20 simply by establishing that its glassware is classifiable under heading 7010.").

CONCLUSION

For the reasons discussed above, the Court finds plaintiffs have overcome the statutory presumption of correctness attached to Customs' classification of the merchandise at issue under various subheadings in Heading 7013, HTSUS. The Court holds the tariff term "preserving jars of glass" is an *eo nomine* provision, and finds the subject merchandise is properly classifiable under subheading 7010.90.50, HTSUS. Accordingly, the subject merchandise is entitled to enter the United States free of duty. The Court orders Customs to reliquidate the entries at issue and refund duties to plaintiff, with interest as provided by law.

**JUDGMENT ORDER**

This case having been duly submitted for decision and this Court, after trial *de novo* and due deliberation, having rendered a decision herein; now in conformity with said decision it is hereby

**ORDERED** that plaintiffs' motion for a directed judgment is denied; and it is further

**ORDERED** that defendant's Motion in Limine, primarily requesting this Court enter an order finding the tariff term "preserving jars of glass" in Heading 7010, HTSUS, is a principal use *or eo nomine* by principal use provision, is denied; and it is further

**ORDERED** that judgment is entered for plaintiffs; and it is further

**ORDERED** that the Customs Service will reliquidate the subject entries in conformity with this opinion, and will refund the excess duties paid together with interest as provided for by law.